1

2

3

4               UNITED STATES DISTRICT COURT

5             NORTHERN DISTRICT OF CALIFORNIA

6

7   ANGELITA JOHNSON,                    Case No.  14-cv-05053-JSC
                Plaintiff,
8
    v.                                   **ORDER RE: DEFENDANT'S MOTION
9                                        TO DISMISS**
    BANK OF AMERICA, N.A.,               Re: Dkt. No. 8
10
                Defendant.
11

12

13          Plaintiff Angelita Johnson brings this action seeking to prevent foreclosure of her home.

14   She sues Defendant Bank of America, N.A. for violation of California's Homeowner's Bill of

15   Rights and fraud.  Plaintiff contends that over a four-year period she attempted to apply for a loan

16   modification with Bank of America, but received contradictory messages from Defendant's

17   representatives and had multiple Notices of Trustee Sales recorded against her property in

18   violation of the dual tracking prohibitions in the Homeowner's Bill of Rights.  Now pending

19   before the Court is Defendant's Motion to Dismiss for failure to state a claim upon which relief

20   can be granted.  (Dkt. No. 8.)  After carefully considering the arguments and briefing submitted

21   and having had the benefit of oral argument on January 22, 2015, the Court hereby GRANTS in

22   part and DENIES in part Defendant's motion to dismiss.

23                      **FACTUAL & PROCEDURAL BACKGROUND**

24          Plaintiff is the owner of real property located at 1408 Bacon Street, Unit 1, San Francisco,

25   California.   At all times relevant to this action, Defendant has been the servicer and/or beneficiary

26   under the Deed of Trust on this property, which is a first lien deed of trust.  (Complaint at ¶ 9.)

27   Beginning in May 2010, Plaintiff contacted Defendant requesting a loan modification.  (*Id.* at ¶

28   10.)  Over course of the next four years Plaintiff was in frequent contact with Defendant regarding

United States District Court
Northern District of California

United States District Court
Northern District of California

applying for a loan modification.  (*Id*. at ¶ 27.)  Plaintiff contends that during this time Defendant would repeatedly request additional documents, which she would promptly provide.  (*Id*. at ¶ 10.)  Despite this, and Defendant's assurances that her loan modification was complete and being processed, Defendant recorded five Notices of Trustee's Sale against the subject property.  (*Id*. at ¶¶ 12, 16, 17, and 22.)

The problems commenced in November 2011 when—despite having submitted a complete loan modification to Defendant in May 2010—Defendant recorded a Notice of Default against the subject property with the San Francisco County Recorder's Office.  (*Id*. at ¶ 11.)  Although Plaintiff continued to apply for a loan modification and Defendant confirmed, in writing, that it had received all the requested documents from Plaintiff in November 2011, Defendant caused a Notice of Trustee's Sale to be recorded against the property on or around December 12, 2011.  (*Id*. at ¶ 12.)  Plaintiff nonetheless continued to apply for a loan modification, and on June 29, 2012, Defendant sent Plaintiff a letter stating that her loan modification application was complete and was being submitted to an underwriter.  (*Id*. at ¶ 13.)  Plaintiff was told that she would receive a response to her application within 30 days.  (*Id*.)  Plaintiff did not receive a response until August 20, 2012, at which point Defendant requested additional documents.  (*Id*. at ¶ 14.)  Plaintiff complied with this request, and after much back and forth regarding the form of the documents required, in November 2012 Plaintiff received an email from her point of contact confirming receipt of the required documents and stating that her application would be submitted to underwriting for a decision.  (*Id*. at ¶ 15.)  Despite this representation, on November 8, 2012 Defendant caused a new Notice of Trustee's Sale to be recorded against the property.  (*Id*. at ¶ 16.)  Plaintiff immediately attempted to contact her point of contact with Defendant and was referred to a new individual who told her that they had no record Plaintiff had even applied for a loan modification.  (*Id*.)

On January 22, 2013, Plaintiff submitted a new loan modification application.  Despite confirmation that Defendant had received the complete loan modification application, Defendant caused a Notice of Trustee's Sale to be recorded against the property two days later.  (*Id*. at ¶ 17.)

Two months later, Plaintiff requested that she be assigned a single-point of contact

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

("SPOC"). (*Id.* at ¶ 18.)  The woman assigned as her SPOC told Plaintiff to submit an entirely new loan modification which Plaintiff did on April 10, 2013. (*Id.*)  Over the course of the next two months, Plaintiff complied with Defendant's repeated requests for additional documents. (*Id.* at ¶ 19.)  During this time, Plaintiff received duplicate requests for documents, including documents she had already submitted. (*Id.*)  Plaintiff thus confirmed with her SPOC that she had received the documents at issue. (*Id.*)  Plaintiff was assured that she had and was told that her application was complete and was being forwarded to the underwriting department. (*Id.*)  While awaiting a determination on this application, Plaintiff was reassigned to three different SPOCs. (*Id.* at ¶ 20.)  Then, in September 2013, Plaintiff's most recent SPOC informed Plaintiff that she did not in fact have an open loan modification application on file. (*Id.* at ¶ 21.)

Accordingly, at the suggestion of her fourth SPOC, Plaintiff submitted yet another loan modification application on September 30, 2013. (*Id.*)  Plaintiff was thereafter advised that she would no longer have a SPOC and in October and November 2013 Plaintiff was unable to reach a representative of Defendant to check on the status of her loan modification application. (*Id.* at ¶ 21.)  Defendant recorded another Notice of Trustee Sale against the property on November 18, 2013. (*Id.* at ¶ 22.)  Nonetheless, in early December 2013, Plaintiff was advised by a representative of Defendant that they had received all her documents and her application had been sent to underwriting. (*Id.* at ¶ 23.)  Plaintiff was also advised that the trustee's sale, scheduled for December 10, 2013, might go forward despite her pending loan modification. (*Id.*)  Plaintiff therefore filed for bankruptcy on December 10, 2013. (*Id.*)

After her bankruptcy was discharged, Plaintiff submitted a new loan modification to her new SPOC on March 5, 2014. (*Id.* at ¶ 24.)  On April 4, 2014, Plaintiff's SPOC informed her that they had all the necessary documents and her application would be forwarded to the underwriter. (*Id.*)  A few weeks later, Plaintiff was assigned a new SPOC who advised her that they had not received documents they requested on April 1 and thus, her application was no longer being considered. (*Id.* at ¶ 25.)  Plaintiff attempted to follow-up regarding the inconsistent information she had received, but she was unable to reach a representative to do so. (*Id.*)  Plaintiff therefore submitted a new loan application at the end of April 2014, but that application was also closed

1  because the changing SPOCs could not coordinate receipt of documents.  (*Id*. at ¶ 26.)

2       Plaintiff contends that although she has been attempting to apply for a loan modification

3  for over four years she has never actually been considered for a modification because of

4  Defendant's lack of continuity with the loan modification process and its refusal to provide her

5  with a single point of contact.  Plaintiff thus filed suit in November 2014 alleging fraud and that

6  Defendant violated California's Homeowner's Bill of Rights by (1) recording a notice of default of

7  trustee's sale while her complete first lien loan modification application was pending, *see* Cal.

8  Civ. Code § 2923.6, and (2) failing to assign her a single point of contact to coordinate receipt of

9  documents and advise Plaintiff of the status of her account, *see* Cal. Civ. Code § 2923.7.  (Dkt.

10  No. 1.)  Defendant thereafter filed the underlying motion to dismiss contending that Plaintiff's

11  allegations fail to state a claim upon which relief could be granted.  (Dkt. No. 8.)

## LEGAL STANDARD

13       A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the

14  sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief

15  that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has

16  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

17  reasonable inference that the defendant is liable for the misconduct alleged. The plausibility

18  standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

19  a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations

20  omitted).  Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short

21  and plain statement of the claim showing that the pleader is entitled to relief, in order to give the

22  defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550

23  U.S. at 554 (internal citations and quotations omitted).

24       For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in

25  the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving

26  party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

27  However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a

28  plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

United States District Court
Northern District of California

4

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009).

Generally, when a complaint is dismissed, "leave to amend shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 892 (9th Cir. 2010); *see* Fed. R. Civ. P. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

### DISCUSSION

The California Homeowner Bill of Rights ("HBOR") is a "state law designed to both provide protections for homeowners facing [non-judicial] foreclosure and reform aspects of the foreclosure process." *Shapiro v. Sage Point Lender Servs.*, No. 14-1591, 2014 WL 5419721, at *4 (C.D. Cal. Oct. 24, 2014) (citing Cal. Civ. Code § 2923.4(a)). The HBOR took effect on January 1, 2013. Among its protections to home borrowers, the HBOR "attempts to eliminate the practice, commonly known as dual tracking, whereby financial institutions continue to pursue foreclosure even while evaluating a borrower's loan modification application." *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1149 (N.D. Cal. 2013); *see* Cal. Civ. Code § 2923.4 (noting that the purpose of the act is to ensure that borrowers are "considered for, and have a meaningful opportunity to obtain, available loss mitigation options" in order to avoid foreclosure). Thus, while a borrower's complete application for a first lien loan modification is pending, the servicer may not record a notice of default, notice of trustee's sale, or conduct a trustee's sale. *See* Cal. Civ. Code § 2923.6(c).

### A. Plaintiff has Stated a Claim for Violation of the HBOR § 2923.6

Plaintiff contends that Defendant violated Section 2923.6's dual tracking prohibition when it recorded the Notice of Trustee Sale on January 24, 2013, and again, on November 18, 2013,

because Plaintiff had complete loan modifications pending with Defendant at the time.

(Complaint ¶ 33.)  The provisions of the HBOR relevant to Plaintiff's dual-tracking claim are:

> (c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending ... until ... the mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period ... has expired.
>
> ...
>
> (g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modification for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

Cal. Civ. Code § 2923.6.

Defendant contends that Plaintiff's claims are barred because Plaintiff was previously considered for a loan modification.  *See* Cal. Civ. Code. § 2923.6(g) ("the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013.").  In particular, Defendant cites to Plaintiff's June 2012 application and the September 2012 denial.  Defendant further argues that because Plaintiff has not alleged any changed circumstances since her 2012 denial she is not eligible for Section 2923.6(g)'s exception for when "there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer."

According to the Complaint, Plaintiff first contacted Defendant regarding a loan modification in May 2010.  (Complaint ¶ 10.)  After much back and forth and further document submission, Defendant sent Plaintiff a letter in June 2012 advising her that her loan modification

6

was complete and was being submitted to an underwriter.  (*Id.* ¶¶ 11-13.)  Two months later, Defendants requested additional documents.  Plaintiff submitted the requested documents by the deadline.  (*Id.*)  Nonetheless, in September 2012 Plaintiff received a letter stating that her application had been denied because she failed to submit the required documents.  (*Id.* ¶ 14.)  The question for the Court is whether this denial counts for purposes of Section 2923.6(c) as a matter of law.  The Court concludes that it does not.

Plaintiff, for her part, contends that because the denial was not on the merits, but rather because Defendant contended she had not submitted the necessary documents, such a denial cannot constitute a good faith evaluation of Plaintiff's loan application.  Defendant correctly points out that nothing in the language of the statute requires the prior denial to be "on the merits" or a "good faith evaluation."  The provision, however, is limited to borrowers "who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification." Cal. Civ. Code § 2923.6(g).  Neither party has submitted any case law interpreting what it means to be "evaluated" or "afforded a fair opportunity to be evaluated."  The legislative history for the HBOR states that one purpose of the amendments "is to ensure that, as part of the non-judicial process, borrowers have a meaningful opportunity to obtain available loss mitigation options..." Sen. Floor Analysis of Assemb. Bill No. 278 ("AB 278 Analysis"), Conf. Rep. No. 1, Reg. Sess., at 27 (Cal. July 2, 2012).  Thus, "[b]orrowers must be thoroughly evaluated for all available loss mitigation options before foreclosure referral, and banks must act on loss mitigation applications before referring loans to foreclosure; i.e. "dual tracking" will be restricted."  *Id.* at 3.

The Court cannot conclude as a matter of law that Plaintiff's application was evaluated or that she was afforded a fair opportunity to be evaluated.  First, Plaintiff has not alleged that her application was actually evaluated; to the contrary, Defendant denied her application for failing to submit documents, not because upon evaluation Defendant concluded that she did not qualify for a loan modification.  Second, drawing all reasonable inferences in Plaintiff's favor, Plaintiff was also not afforded a fair opportunity to be evaluated.  Her application was denied for failing to submit documents that she did in fact submit and, in any event, were requested after Defendant had already advised her that her application was complete (that is no more documents were

1    required).   Such circumstances are not a fair opportunity to be evaluated.

2        Defendant laments that such a holding will increase the risk "of borrowers submitting

3    multiple applications for first lien loan modification for the purpose of delay," Cal. Civ. Code §

4    2923.6, a risk the legislature specifically sought to avoid or at least mitigate.  The Court disagrees.

5    While such intentional delay might result where the borrower fails to submit the requested

6    documents, the allegation here is that the borrower did submit the requested documents and the

7    Court's holding is limited to the circumstances alleged in the Complaint.  Accordingly,

8    Defendant's motion to dismiss Plaintiff's claim under Section 2923.6 is denied.

9        **B.  Plaintiff has Stated a Claim for Violation of the HBOR § 2923.7**

10        "In connection with its enactments to address dual tracking, the California legislature also

11   enacted a single point of contact provision [SPOC] to prevent borrowers from being given the run-

12   around." *Rockridge Trust v. Wells Fargo NA*, No. 13-01457, 2014 WL 688124, at *23 (N.D. Cal.

13   Feb. 19, 2014) (internal citation and quotation marks omitted).  In particular, Section 2923.7 of the

14   California Civil Code provides that upon a borrower's request for a foreclosure prevention

15   alternative, the servicer must promptly designate one person to be the point of contact to

16   communicate directly with the borrower. Cal. Civ.Code § 2923.7(a). The SPOC is responsible for

17   doing all of the following:

> (1) Communicating the process by which a borrower may apply for
>     an available foreclosure prevention alternative and the deadline
>     for any required submissions to be considered for these options.
> (2) Coordinating receipt of all documents associated with available
>     foreclosure prevention alternatives and notifying the borrower of
>     any missing documents necessary to complete the application.
> (3) Having access to current information and personnel sufficient to
>     timely, accurately, and adequately inform the borrower of the
>     current status of the foreclosure prevention alternative.
> (4) Ensuring that a borrower is considered for all foreclosure
>     prevention alternatives offered by, or through, the mortgage
>     servicer, if any.
> (5) Having access to individuals with the ability and authority to
>     stop foreclosure proceedings when necessary.

Cal. Civ. Code § 2923.7(b).

        Plaintiff contends that Defendant violated Section 2923.7 "when it purported to assign

Plaintiff multiple single points of contact from 2013 to the present whom were unable to

United States District Court
Northern District of California

United States District Court
Northern District of California

coordinate the receipt of documents and were unable to advise Plaintiff as to the status of her account." (Complaint ¶ 39.) Specifically, Plaintiff alleges while she was in the process of submitting a loan modification application with one SPOC, she would be transferred to a new SPOC who would inform Plaintiff that she had no loan modification pending or close her application for failure to submit documents which she had previously submitted to another SPOC. (*Id*.)

Defendant's arguments in favor of dismissal are two-fold. First, Defendant contends Plaintiff fails to allege a violation of Section 2923.7 because nothing in the statute precludes reassignment of a SPOC once assigned, and the statute does not require the SPOC to be knowledgeable to Plaintiff's satisfaction. Second, Defendant argues that even if Plaintiff's allegations were sufficient, Plaintiff is ineligible for any relief under the statue. The Court is not persuaded by either argument.

Plaintiff alleges that she was assigned at least eight different SPOCs during the four years she attempted to obtain a loan modification from Defendant. (Complaint ¶¶ 18-26.) While this is not sufficient to demonstrate a violation of the statute per se, Plaintiff's allegations that the SPOCs were unable to coordinate receipt of documents with one telling Plaintiff that her application was complete and another telling her she had no application pending, *see* Complaint ¶¶19-21, or telling her that her application was no longer being considered because they had not received documents that her prior SPOC told her they had received, *id*. ¶¶24-25, 26, are sufficient to state a claim under Section 2923.7.[1] *See, e.g*., Cal. Civ. Code § 2923.7(b)(2) (the SPOC is responsible for "coordinating receipt of all documents"); § 2923.7(b)(3)(the SPOC shall "[have] access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status"); *see also Garcia v. Wells Fargo Bank N.A*., No. 13–3670, 2014 WL 458208 at *4 (N.D. Cal. Jan. 31, 2014) (denying motion to dismiss Section 2923.7 claim where plaintiff alleged that her SPOC was unresponsive to her phone calls); *Mungai v. Wells Fargo Bank*, No. 14-

---

[1] Defendant's suggestion that the Court should infer that Plaintiff was at fault in these communications and failed to submit the necessary documents based on her prior bankruptcy filings is wholly improper on a motion to dismiss where the Court resolves all inferences in Plaintiff's favor.

United States District Court
Northern District of California

00289, 2014 WL 2508090, at *10 (N.D. Cal. June 3, 2014) ("Finding that a mortgage servicer complies with Section 2923.7 when it assigns an SPOC who fails to communicate with the borrower would render the SPOC requirement a nullity.") (internal citations omitted).

The Court thus turns to the more complicated question of whether Plaintiff's claim is nonetheless barred because she is ineligible for any relief under the statute. Section 2924.12 governs relief under Section 2923.7. Subsection (a) provides that if a "trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation" whereas subsection (b) authorizes "actual economic damages" if a "trustee's deed upon sale has been recorded." Cal. Civ. Code § 2924.12. Plaintiff concedes that as no actual trustee sale has taken place she is not eligible for actual damages. Thus, the inquiry turns on whether Plaintiff has adequately pled entitlement to injunctive relief.

Plaintiff contends that because of Defendant's violation of the statute she has never been considered for a loan modification which has "resulted in Plaintiff's home being placed in active foreclosure, with active trustee sale dates, and resulted in Plaintiff having to file bankruptcy in order to prevent Defendant from selling her property before she had been reviewed for a modification." (Dkt. No. 15 at 13:23-26 (citing Complaint at ¶¶ 23, 27).) Defendant, for its part, has not cited any authority interpreting the term "material" for purposes of Section 2924.12.[2] From a Rule 12(b)(6) viewpoint, "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Twombly*, 550 U.S. at 555. "Had [Plaintiff] obtained a modification, [she] may have been able to keep [her] house and lower [her] mortgage payments.

---

[2] Defendant's reliance on *Johnson v. PNC Mortgage*, No. C 14-02976, 2014 WL 6629585, at *8 (N.D. Cal. Nov. 21, 2014), is misplaced. In *Johnson*, the court declined to consider whether Plaintiff had alleged a material violation under section 2924.12 because the plaintiff lacked standing to pursue the claim as a violation of California Business and Professions § 17200. *Id.* Likewise, the language Defendant relies on from *Major v. Wells Fargo Bank, N.A.*, No. 14-CV-998-LAB-RBB, 2014 WL 4103936, at *6 (S.D. Cal. Aug. 18, 2014), regarding the plaintiffs' ineligibility for damages in light of their default, was in reference to another provision of the HBOR, and fails to provide any guidance as to what the legislature meant by "material" in Section 2924.12

United States District Court
Northern District of California

At this stage, the Court cannot say that this alleged violation was not material…Plaintiffs' damages may turn out to be minimal, but that is not something that the Court can determine on a Motion to Dismiss." *Segura v. Wells Fargo Bank, N.A.*, No. 14-04195, 2014 WL 4798890, at *7 (C.D. Cal. Sept. 26, 2014).

The Court concludes that Plaintiff has adequately pled a claim for relief under Section 2923.7. The motion to dismiss is therefore denied as to Plaintiff's injunctive relief claims, but granted as to Plaintiff's claim for damages as Plaintiff did not oppose the motion to dismiss on this ground.

### C. Plaintiff's Claim for Fraud by Misrepresentation

Plaintiff brings a claim for fraud by misrepresentation. To state a claim for fraudulent misrepresentation, the plaintiff must allege: 1) a misrepresentation; 2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; 4) justifiable reliance; and 5) resulting damage. *Lazar v. Superior Court*, 49 Cal.Rptr.2d 377 (1996). Defendant argues that Plaintiff's claim does not satisfy the pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure because Plaintiff has not alleged the misrepresentations or damages with sufficient specificity.

Rule 9(b) states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9. Thus, the Ninth Circuit has held that, "while a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

United States District Court
Northern District of California

1   Plaintiff has sufficiently pled the circumstances of the fraud for purposes of Rule 9(b).

2   Plaintiff has alleged that on five different occasions she was told by named Bank of America

3   representatives that her loan modification application was complete.  (Complaint ¶¶ 13, 15, 17, 19,

4   23, 24.)  Nonetheless, after each such representation, Plaintiff was told either that she had no loan

5   modification pending, or that her application had been denied for failure to submit the required

6   paperwork.  (*Id*. at ¶¶ 14, 16, 18, 21, 25, 26.)  Thus, Plaintiff has pled that she submitted a

7   complete loan modification application on multiple occasions only to be told that her application

8   either did not exist or was incomplete.  This is sufficient to allege misrepresentation.  The

9   misrepresentation was material because it directly impacted her ability to obtain a loan

10  modification.  Further, Plaintiff has adequately alleged reliance because she alleges that did not

11  pursue another foreclosure alternative because she believed Defendant was considering her

12  application for a loan modification.  (*Id*. at ¶ 51.)

13  Finally, Defendant argues that Plaintiff has not adequately alleged damages because the

14  amount in default is owed to Defendant under the terms of the contract.   In her opposition brief,

15  Plaintiff expanded on her damages claim suggesting that "but for Defendant's conduct from June

16  2012 to present, Plaintiff would have sought other alternatives to foreclosure, such as refinancing,

17  reinstatement, or a short-sale." (Dkt. No. 15 at 16:28-17:2.)  However, these allegations are not in

18  the Complaint.  The Complaint alleges damages, in part, of "imminent loss of her Property, loss of

19  money including but not limited to losses through overcharges, incurred attorneys' fees and costs

20  to save her home, the accumulation of excessive arrears which could have been avoided through

21  other foreclosure prevention alternatives, a loss of reputation and goodwill, destruction of credit."

22  (*Id*. at ¶ 55.)  These allegations of damages are independent of Plaintiff's obligation to meet her

23  mortgage payments.  *See Peterson v. Wells Fargo Bank, N.A.*, No. 13-03392, 2014 WL 3418870,

24  at *5 (N.D. Cal. July 11, 2014) (finding in accordance with other courts that unwarranted late fees

25  and attorney's fees were sufficient allegations of damages); *Izsak v. Wells Fargo Bank, N.A.*, No.

26  C 13-05362, 2014 WL 1478711, at *4 (N.D. Cal. Apr. 14, 2014) (holding that the plaintiff's

27  allegations that he had been charged with unwarranted late fees, attorneys fees, and that his credit

28  has been damaged were sufficient to allege damages based on fraud.)  To the extent that Plaintiff

seeks damages based on not pursuing other foreclosure alternatives of refinancing, reinstatement, or a short-sale because she thought she her loan modification application was pending, Plaintiff has failed to adequately allege this basis for relief.

Accordingly, Defendant's motion to dismiss Plaintiff's fraud claim is granted solely with respect to the adequacy of her damages allegations and Plaintiff shall be granted leave to amend her damages claims to include claims regarding her ability to pursue other alternatives to foreclosure.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (Dkt. No. 8) is GRANTED in part and DENIED in part.  The motion is GRANTED with prejudice as to Plaintiff's damages claims under California Civil Code Section 2923.7, and is granted as to Plaintiff's Fraud claim for failure to sufficiently allege damage with leave to amend.  The motion is DENIED as to Plaintiff's remaining claims under the Homeowner's Bill of Rights.

Plaintiff shall file an amended complaint within 14 days.

**IT IS SO ORDERED**.

Dated:  January 23, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California