UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELITA JOHNSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BANK OF AMERICA, N.A.,<br><br>　　　　　Defendant. | Case No. 14-cv-05053-JSC<br><br>**ORDER RE DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 25 |

Plaintiff Angelita Johnson brings this action seeking to prevent foreclosure of her home. She sues Defendant Bank of America, N.A. for violation of California's Homeowner's Bill of Rights and fraud. Plaintiff contends that over a four-year period she attempted to apply for a loan modification with Bank of America, but received contradictory messages from Defendant's representatives and had multiple Notices of Trustee Sales recorded against her property in violation of the dual tracking prohibitions in the Homeowner's Bill of Rights ("HBOR"). The Court previously denied Defendant's motion to dismiss Plaintiff's HBOR claims and granted the motion as to Plaintiff's fraud claim solely to allow Plaintiff to supplement her damages allegations. (Dkt. No. 20.) Plaintiff thereafter filed her First Amended Complaint ("FAC") which Defendant again moves to dismiss. After carefully considering the arguments and briefing submitted, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and DENIES Defendant's motion to dismiss.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiff is the owner of real property located at 1408 Bacon Street, Unit 1, San Francisco, California. At all times relevant to this action, Defendant has been the servicer and/or beneficiary under the Deed of Trust on this property, which is a first lien deed of trust. (FAC at ¶ 9.)

Beginning in May 2010, Plaintiff contacted Defendant requesting a loan modification. (*Id.* at ¶ 10.) Over course of the next four years Plaintiff was in frequent contact with Defendant regarding applying for a loan modification. (*Id.* at ¶ 27.) Plaintiff contends that during this time Defendant would repeatedly request additional documents, which she would promptly provide. (*Id.* at ¶ 10.) Despite this, and Defendant's assurances that her loan modification was complete and being processed, Defendant recorded five Notices of Trustee's Sale against the subject property. (*Id.* at ¶¶ 12, 16, 17, and 22.)

The problems commenced in November 2011 when—despite having submitted a complete loan modification to Defendant in May 2010—Defendant recorded a Notice of Default against the subject property with the San Francisco County Recorder's Office. (*Id.* at ¶ 11.) Although Plaintiff continued to apply for a loan modification and Defendant confirmed, in writing, that it had received all the requested documents from Plaintiff in November 2011, Defendant caused a Notice of Trustee's Sale to be recorded against the property on or around December 12, 2011. (*Id.* at ¶ 12.) Plaintiff nonetheless continued to apply for a loan modification, and on June 29, 2012, Defendant sent Plaintiff a letter stating that her loan modification application was complete and was being submitted to an underwriter. (*Id.* at ¶ 13.) Plaintiff was told that she would receive a response to her application within 30 days. (*Id.*) Plaintiff did not receive a response until August 20, 2012, at which point Defendant requested additional documents. (*Id.* at ¶ 14.) Plaintiff complied with this request, and after much back and forth regarding the form of the documents required, in November 2012 Plaintiff received an email from her point of contact confirming receipt of the required documents and stating that her application would be submitted to underwriting for a decision. (*Id.* at ¶ 15.) Despite this representation, on November 8, 2012 Defendant caused a new Notice of Trustee's Sale to be recorded against the property. (*Id.* at ¶ 16.) Plaintiff immediately attempted to contact her point of contact with Defendant and was referred to a new individual who told her that they had no record Plaintiff had even applied for a loan modification. (*Id.*)

On January 22, 2013, Plaintiff submitted a new loan modification application. Despite confirmation that Defendant had received the complete loan modification application, Defendant

2

1    caused a Notice of Trustee's Sale to be recorded against the property two days later. (*Id*. at ¶ 17.)

2    Two months later, Plaintiff requested that she be assigned a single-point of contact
3    ("SPOC"). (*Id*. at ¶ 18.) The woman assigned as her SPOC told Plaintiff to submit an entirely
4    new loan modification which Plaintiff did on April 10, 2013. (*Id*.) Over the course of the next
5    two months, Plaintiff complied with Defendant's repeated requests for additional documents. (*Id*.
6    at ¶ 19.) During this time, Plaintiff received duplicate requests for documents, including
7    documents she had already submitted. (*Id*.) Plaintiff thus confirmed with her SPOC that she had
8    received the documents at issue. (*Id*.) Plaintiff was assured that she had and was told that her
9    application was complete and was being forwarded to the underwriting department. (*Id*.) While
10   awaiting a determination on this application, Plaintiff was reassigned to three different SPOCs.
11   (*Id*. at ¶ 20.) Then, in September 2013, Plaintiff's most recent SPOC informed Plaintiff that she
12   did not in fact have an open loan modification application on file. (*Id*. at ¶ 21.)

13   Accordingly, at the suggestion of her fourth SPOC, Plaintiff submitted yet another loan
14   modification application on September 30, 2013. (*Id*.) Plaintiff was thereafter advised that she
15   would no longer have a SPOC and in October and November 2013 Plaintiff was unable to reach a
16   representative of Defendant to check on the status of her loan modification application. (*Id*.)
17   Defendant recorded another Notice of Trustee Sale against the property on November 18, 2013.
18   (*Id*. at ¶ 22.) Nonetheless, in early December 2013, Plaintiff was advised by a representative of
19   Defendant that they had received all her documents and her application had been sent to
20   underwriting. (*Id*. at ¶ 23.) Plaintiff was also advised that the trustee's sale, scheduled for
21   December 10, 2013, might go forward despite her pending loan modification. (*Id*.) Plaintiff
22   therefore filed for bankruptcy on December 10, 2013. (*Id*.)

23   After her bankruptcy was discharged, Plaintiff submitted a new loan modification to her
24   new SPOC on March 5, 2014. (*Id*. at ¶ 24.) On April 4, 2014, Plaintiff's SPOC informed her that
25   they had all the necessary documents and her application would be forwarded to the underwriter.
26   (*Id*.) A few weeks later, Plaintiff was assigned a new SPOC who advised her that they had not
27   received documents they requested on April 1 and thus, her application was no longer being
28   considered. (*Id*. at ¶ 25.) Plaintiff attempted to follow-up regarding the inconsistent information

3

1  she had received, but she was unable to reach a representative to do so. (*Id.*)  Plaintiff therefore
2  submitted a new loan application at the end of April 2014, but that application was also closed
3  because the changing SPOCs could not coordinate receipt of documents.  (*Id.* at ¶ 26.)

4        Plaintiff contends that although she has been attempting to apply for a loan modification
5  for over four years she has never actually been considered for a modification because of
6  Defendant's lack of continuity with the loan modification process and its refusal to provide her
7  with a single point of contact.  Plaintiff thus filed suit in November 2014 alleging fraud and that
8  Defendant violated California's Homeowner's Bill of Rights by (1) recording a notice of default of
9  trustee's sale while her complete first lien loan modification application was pending, *see* Cal.
10 Civ. Code § 2923.6, and (2) failing to assign her a single point of contact to coordinate receipt of
11 documents and advise Plaintiff of the status of her account, *see* Cal. Civ. Code § 2923.7.  (Dkt.
12 No. 1.)

13       Defendant moved to dismiss contending that Plaintiff's allegations failed to state a claim
14 upon which relief could be granted.  (Dkt. No. 8.)  The Court denied Defendant's motion as to
15 Plaintiff's HBOR claims finding that Plaintiff had adequately pled a claim for violation of Section
16 2923.6's dual tracking provisions, and a claim for violation of Section 2923.7's requirement of a
17 single point of contact.  (Dkt. No. 20.)  With respect to Plaintiff's fraud claim, the Court granted
18 Defendant's motion to dismiss Plaintiff's fraud claim solely with respect to the adequacy of her
19 damages allegations and Plaintiff was granted leave to amend her damages claims to include
20 allegations regarding her ability to pursue other alternatives to foreclosure.  Plaintiff amended her
21 complaint in accordance with the Court's Order and Defendant filed the now pending motion to
22 dismiss the FAC.  (Dkt. Nos. 21 & 25.)

23 **LEGAL STANDARD**

24       A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the
25 sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief
26 that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has
27 facial plausibility when the plaintiff pleads factual content that allows the court to draw the
28 reasonable inference that the defendant is liable for the misconduct alleged. The plausibility

1    standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that
2    a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations
3    omitted). Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short
4    and plain statement of the claim showing that the pleader is entitled to relief, in order to give the
5    defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550
6    U.S. at 554 (internal citations and quotations omitted).

7    For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in
8    the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving
9    party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).
10   However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a
11   plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels
12   and conclusions, and a formulaic recitation of the elements of a cause of action will not do."
13   *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "Determining whether a
14   complaint states a plausible claim for relief . . . [is] a context-specific task that requires the
15   reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556
16   U.S. 662, 663-64 (2009).

17   Generally, when a complaint is dismissed, "leave to amend shall be freely given when
18   justice so requires." *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 892 (9th Cir. 2010); *see*
19   Fed. R. Civ. P. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant
20   leave to amend even if no request to amend the pleading was made, unless it determines that the
21   pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d
22   1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

24   The Court previously found that Plaintiff had adequately pled each element of a fraud
25   claim, but granted her leave to amend to include additional allegations regarding her damages
26   claim. (Dkt. No. 20.) To state a claim for fraudulent misrepresentation, the plaintiff must allege:
27   1) a misrepresentation; 2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; 4)
28   justifiable reliance; and 5) resulting damage. *Lazar v. Superior Court*, 49 Cal.Rptr.2d 377 (1996).

1  The Court's prior order held that

>   Plaintiff has sufficiently pled the circumstances of the fraud for purposes of Rule 9(b). Plaintiff has alleged that on five different occasions she was told by named Bank of America representatives that her loan modification application was complete. (Complaint ¶¶ 13, 15, 17, 19, 23, 24.) Nonetheless, after each such representation, Plaintiff was told either that she had no loan modification pending, or that her application had been denied for failure to submit the required paperwork. (*Id.* at ¶¶ 14, 16, 18, 21, 25, 26.) Thus, Plaintiff has pled that she submitted a complete loan modification application on multiple occasions only to be told that her application either did not exist or was incomplete. This is sufficient to allege misrepresentation. The misrepresentation was material because it directly impacted her ability to obtain a loan modification. Further, Plaintiff has adequately alleged reliance because she alleges that did not pursue another foreclosure alternative because she believed Defendant was considering her application for a loan modification. (*Id.* at ¶ 51.)

(Dkt. No. 20 at 12:1-12.) With respect to damages, the Court concluded that Plaintiff had adequately pled damages based on her allegations of "imminent loss of her Property, loss of money including but not limited to losses through overcharges, incurred attorneys' fees and costs to save her home, the accumulation of excessive arrears which could have been avoided through other foreclosure prevention alternatives, a loss of reputation and goodwill, destruction of credit." (Dkt. No. 20 at 12:8-21 (quoting Complaint ¶ 55).) *See Peterson v. Wells Fargo Bank*, N.A., No. 13-03392, 2014 WL 3418870, at *5 (N.D. Cal. July 11, 2014) (finding in accordance with other courts that unwarranted late fees and attorney's fees were sufficient allegations of damages); *Izsak v. Wells Fargo Bank, N.A.*, No. C 13-05362, 2014 WL 1478711, at *4 (N.D. Cal. Apr. 14, 2014) (holding that the plaintiff's allegations that he had been charged with unwarranted late fees, attorneys fees, and that his credit has been damaged were sufficient to allege damages based on fraud.) Because Plaintiff's opposition brief suggested that she also sought damages based the fact that she had not pursued other foreclosure alternatives such as refinancing, reinstatement, or a short-sale because she believed that her application for a loan modification was pending, she was granted leave to amend to add these claims.

Despite the Court's prior Order concluding that Plaintiff had adequately alleged damages in support of her fraud claim, Defendant has again moved to dismiss Plaintiff's amended fraud claim contending that Plaintiff has (1) failed to allege damages with sufficient particularity, and

6

(2) failed to show that her damages were caused by Defendant's alleged misrepresentations. Defendant's arguments are unpersuasive.

Plaintiff's FAC alleges the following damages

> increased arrears that would not have accumulated if Plaintiff had pursued other foreclosure prevention alternatives such as reinstatement, refinancing, or a short sale and which caused Plaintiff's principal balance to grow, the imminent loss of her Property, loss of money including but not limited to losses through overcharges, incurred attorneys' fees and costs to save her home, the accumulation of excessive arrears which could have been avoided through other foreclosure prevention alternatives, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression

(FAC at ¶ 55.) Plaintiff has thus amended the claim for damages to include allegations that she did not consider foreclosure prevention alternatives such as reinstatement, refinancing, or a short sale because she relied on Defendant's representations. These allegations—as with Plaintiff's prior allegations—are sufficient to allege that Plaintiff was damaged based on her reliance on Defendant's misrepresentations regarding the status of her loan modification applications.

"[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged "so that they can defend against the charge and not just deny that they have done anything wrong." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (citation and quotation omitted). Plaintiff's amended allegations put Defendant on notice that Plaintiff contends that she would have pursued other foreclosure alternatives such as short sale, refinancing, or reinstatement, but for her reliance on Defendant's misrepresentations. This is adequate at the motion to dismiss stage *See, e.g., Rockridge Trust v. Wells Fargo NA*, No. 13-CV-01457-JCS, 2014 WL 688124, at *18 (N.D. Cal. Feb. 19, 2014) (concluding that plaintiffs' allegation that "[i]f [Wells Fargo] had not purported to engage in a loan modification process, Plaintiff would have focused his time on seeking alternatives to foreclosure other than loan modification, such as reorganization under Bankruptcy law" was sufficient to allege damaged for purposes of 9(b).").

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (Dkt. No. 25) is DENIED. Defendant shall answer the FAC within 21 days.

**IT IS SO ORDERED.**

Dated: March 24, 2015

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE